SMITH v. GARDNER.

Cancellation of Instruments—Evidence—Sufficiency.
On a bill to cancel a discharge of a mortgage and to restore the mortgage and notes accompanying it, evidence examined, and *held*, to support a decree granting the relief prayed, on the ground that the mortgagee was mentally incompetent and unduly influenced to execute the discharge.

Appeal from Berrien; Coolidge, J. Submitted February 13, 1907. (Docket No. 132.) Decided March 26, 1907.

Bill by Myra Smith, administratrix of the estate of Aaron E. Gardner, deceased, against Edward B. Gardner and Marie Gardner for the cancellation of a discharge of a certain mortgage, and to restore said mortgage and notes accompanying it. From a decree for complainant, defendants appeal. Affirmed.

On January 14, 1902, one Aaron Gardner and his wife conveyed 160 acres of land to the defendant Edward, their son. The title was in Aaron Gardner. The purchase price was $6,400, of which $400 represented personal property upon the farm. Edward paid $200 at the time of purchase. He gave three promissory notes for the balance, one for $2,200 due in five years, one for $2,200 due in 10 years, and one for $1,800 due in 15 years, secured by a mortgage on the farm. On August 16, 1904, Aaron Gardner discharged this mortgage, and the discharge was duly recorded. When the conveyance was made, Aaron and his wife were living upon the farm. He was 74 years old. He died December 14, 1904. He was then a little past 76 years of age. Before he executed the discharge he was stricken with paralysis, and became very feeble. Shortly after the sale to his son he bought a

small lot in a nearby village for $40, moved a small tenement house upon it, and there lived until his death. He had lived with his wife 50 years. At the time of making the conveyance and taking back the mortgage, he talked with his wife and children about it. He left surviving him his widow, two sons, Myra Smith, his daughter, the complainant in this case, and the son of a deceased daughter.

The discharge was executed under the following circumstances: Aaron Gardner and his wife visited Edward August 15th, and remained with him that night. On the next day he and his father went to the village of Buchanan to the office of a lawyer, where the discharge was drawn and executed. Its execution was, by an understanding between the father and son, kept secret. Neither the widow nor either of the other children knew about it until after the death and funeral of Mr. Gardner. Edward's wife on the day of the funeral stated that the mortgage was discharged. Both the mortgage and the notes were kept by the deceased in the usual place, and were found there at his death. Search was then made for the new notes stated to have been executed at the time of the discharge, but were not then found. Subsequently the widow discovered them on March 11, 1905, in a drawer among her papers. The new notes were three in number, for $1,800, $1,900, and $2,200, respectively, maturing in 10, 15, and 20 years, and the rate of interest reduced from 6 to 5 per cent. Complainant filed this bill to procure a cancellation of the discharge, and to restore the mortgage and notes accompanying it. Proofs were taken in open court, and decree rendered for the complainant.

*Will R. Stevens* (*N. A. Hamilton*, of counsel), for complainant.

*James O'Hara*, for defendants.

GRANT, J. (*after stating the facts*). The grounds upon which recovery is sought are incompetency, undue influence, and want of consideration.

Under the established facts in the case, the defendant Edward, then 39 years old, had no property except $200, which he paid his father. His father desired to sell the farm to him upon a contract. He refused to accept a contract, and insisted upon a deed and mortgage. His father and mother assented. He then procured the discharge in question. The effect is to leave the widow without a dollar for her support. It is in the power of Edward to dissipate the entire estate. He is financially irresponsible. This action on the part of the husband and father is unnatural. The mortgage and notes accompanying it were not surrendered. Edward testified to the only reason which can be given for his father's retaining them, and is found in a conversation between him and his father at the execution of the discharge. His testimony is excluded by the statute as equally within the knowledge of the deceased. But if it were not, we should not hesitate to disbelieve it. No good reason is given for virtually disinheriting his wife with whom he had lived for half a century, and for a desire to keep the discharge a secret from her.

The defendant filed his answer April 1, 1905, evidently in ignorance of the fact that the notes had been found. He alleged that the three notes were one for $1,500, and two for $2,200 each, and that one was due in 7 years, one in 12, and one in 17. A transaction so important to him made so little impression upon his memory that he had forgotten the amounts and times of payment. The facts of the condition of Aaron Gardner at the time must be considered in connection with the unnaturalness of the transaction. The evidence disclosed, as stated by his physicians, that: "He had all the symptoms of senile decay. He was worn out, and was not competent to transact business of importance."

We think the learned circuit judge reached the correct conclusion, and the decree is affirmed.

McAlvay, C. J., and Carpenter, Blair, and Montgomery, JJ., concurred.